GRANT WOLF
WOLF LEGAL GROUP
400 S. JEFFERSON ST. SUITE 109
SPOKANE, WA, 99204
Phone: (502)681-8655
grant@law-lynxnetwork.com

MILTON G. ROWLAND
LAW OFFICE OF MILTON G. ROWLAND
1517 W. BROADWAY AVE.
SPOKANE, WA, 99201
Phone: (509)327-5094 Fax:(509)252-5094
milt@spokanelitigation.com

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

TRAVIS JAY WISE, CHELSIE BYROADS, ANDILEE JORDAN, DANIEL BETZ, DAVID CHARBONNEAU, CHERYL BERNARD, DESIRAE KING, JERRY LEASE, JORDAN LOZARO, LAURECE RUST, MARY DRASS, NADIA FEDOROVA, TERRY DUNN, RITA WALDO, LEVI HINES, CHRISTOPHER MOORE, SHELLEY ENGLE, THOMAS FORSYTH, and TRAVIS YEAGER, on behalf of themselves and those similarly situated,

        **Plaintiffs,**

vs.

GOVERNOR JAY INSLEE, IN HIS OFFICIAL CAPACITY; DONALD CLINTSMAN, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF DEPARTMENT OF SOCIAL AND HEALTH SERVICES; CHIEF BRIAN SCHAEFFER, IN HIS OFFICIAL CAPACITY AS THE CHIEF OF THE SPOKANE FIRE DEPARTMENT; CHIEF JOHN BATISTE, IN HIS OFFICIAL CAPACITY AS THE CHIEF OF THE WASHINGTON STATE PATROL; AND ROGER MILLAR, IN HIS OFFICIAL CAPACITY AS SECRETARY OF WASHINGTON STATE DEPARTMENT OF TRANSPORTATION,

        **Defendants**

Case No.:

COMPLAINT

COMPLAINT - 1

## I.    INTRODUCTION

1.1 All plaintiffs are on the brink of having adverse employment action of some sort taken against them.  For most—troopers in the Washington State Patrol, firefighters for the City of Spokane, among others—October 5 was a hard deadline.  If they did not get vaccinated on October 5th, the procedure was initiated to deprive them of their careers and livelihood.

1.2 In each case, a form of disability or sincere religious belief requires them to decline vaccination.

## II.    PARTIES AND JURISDICTION

### A.    Subject matter jurisdiction

2.1 Plaintiffs are citizens of Washington and Idaho, all of whom work in Washington and whose employment is adversely affected by a proclamation of the Governor of the State of Washington, and who bring this lawsuit pursuant to 28 U.S.C. 1331, with supplemental jurisdiction asserted over State claims pursuant to 28 U.S.C. 1367. Declaratory remedies are sought pursuant to 28 U.S.C. 2201, and injunctive relief sought pursuant to Fed.R.Civ. P. 65, and by statute and the Court's inherent equitable powers.

### B.  Venue

2.2 Venue is proper pursuant to 28 U.S.C. 1391. Most plaintiffs reside and/or work in this District, and the claims asserted herein are related to employment relationships and contracts undertaken in this State, most in this District.

### C.  Personal jurisdiction.

2.3 Defendants are all citizens of the State of Washington. The claims all arose in Washington to plaintiffs' understanding and belief.

COMPLAINT - 2

2.3.1    Defendant Jay Inslee, Governor of Washington, is named here only in his official capacity and only for equitable relief, not for damages, with ancillary attorney fees if available. Governor Inslee's September 2021 proclamations unilaterally rewrote the existing contractual relationships between plaintiffs and their employers.

2.3.2    Defendant City of Spokane is named only to the extent that it is not an "arm of the State" for purposes of 42 U.S.C. 1983. Its official policy, expressed by the Fire Chief in a recent memo to all fire department employees, including numerous plaintiffs, is action depriving numerous plaintiffs of federally protected rights and therefore the City of Spokane is a "person" for purposes of this lawsuit and Sec. 1983 claims and a proper defendant herein..

2.3.3    Brian Schaefer is the Fire Chief in Spokane, the final decisionmaker with respect to fire department employee policies. His September 2021 memo provides for the termination, or other adverse employment actions, without cause, of several plaintiffs.

2.3.4    Chief John Batiste is the Chief executive officer of the Washington State Patrol. He is named herein only in his official capacity, and only prospective relief is requested against him.

2.3.5    Roger Millar is the Secretary of the Washington State Department of Transportation. He is named only for purposes of injunctive and declaratory relief, and not for damages.

2.3.6    Donald Clintsman is the Secretary of the Washington Department of Social and Health Services and is named only for such remedies as may be permitted pursuant to the Eleventh Amendment.

2.4    Eleventh Amendment statement: No remedies are sought against state actors not generally subject to suit in this Court pursuant to the Eleventh Amendment. Governor Inslee, for example,

COMPLAINT - 3

1  is a named party in his official capacity, but the only remedy sought against him is injunctive

2  relief, with possible ancillary remedies like costs. No allegation is to be construed herein in such

3  a manner as to violate the Eleventh Amendment.

4  2.5     Plaintiffs are all employees of the above-named agencies, and work in the state of

5  Washington.

6

7       2.5.2  Plaintiff TRAVIS JAY WISE is a Spokane firefighter, an individual residing in Spokane

8              County.

9       2.5.3  Plaintiff DANIEL BETZ is a Spokane firefighter, an individual residing in Spokane

10             County.

11      2.5.4  Plaintiff JERRY LEASE is a Spokane firefighter, an individual residing in Grant

12             County.

13      2.5.5  Plaintiff CHELSIE BYROADS is an employee of the Department of Social and Health

14             Services, an individual residing in Pierce County.

15      2.5.6  Plaintiff CHERYL BERNARD is an employee of the Department of Social and Health

16             Services, an individual residing in Spokane County.

17      2.5.7  Plaintiff NADIA FEDOROVA is an employee of the Department of Social and Health

18             Services, an individual residing in King County.

19      2.5.8  Plaintiff SHELLEY ENGLE is an employee of the Department of Social and Health

20             Services, an individual residing in Spokane County.

21      2.5.9  Plaintiff JORDAN LOZARO is an employee of the Department of Social and Health

22             Services, an individual residing in Spokane County.

23      2.5.10     Plaintiff DESIRAE KING is an employee of the Department of Social and Health

24             Services, an individual residing in Spokane County.

25

26

COMPLAINT - 4

2.5.11    Plaintiff MARY DRASS is an employee of the Department of Social and Health Services, an individual residing in Spokane County.

2.5.12    Plaintiff CHELSEA BYROADS is an employee of the Department of Social and Health Services, an individual residing in Spokane County.

2.5.13    Plaintiff LAURECE RUST is an employee of the Department of Social and Health Services, an individual residing in Pierce County.

2.5.14    Plaintiff THOMAS FORSYTH is a Washington State Patrolman, an individual, residing in Benton County.

2.5.15    Plaintiff ANDILEE JORDAN is a Washington State Patrolwoman, an individual, residing in Island County.

2.5.16    Plaintiff TRAVIS YEAGER is a Washington State Patrolman, an individual, residing in Kittitas County.

2.5.17    Plaintiff LEVI HINES is an employee of the Washington State Department of Transportation, an individual, residing in Spokane County.

2.5.18    Plaintiff DAVID CHARBONNEAU is an employee of the Washington State Department of Transportation, an individual, residing in Spokane County

2.5.19    Plaintiff CHRISTOPHER MOORE is an employee of the Washington State Department of Transportation, an individual, residing in Spokane County

2.5.20    Plaintiff TERRY DUNN is an employee of the Washington State Department of Transportation, an individual, residing in Spokane County

2.5.21    Plaintiff RITA WALDO is a health care worker, an individual residing in Kootenai County, Idaho and working in Spokane County, Washington.

### III.    FACTS

COMPLAINT - 5

3.1 Governor Inslee issued Proclamation 21-14.2 (the "Proclamation") on September 27, 2021. In the Proclamation, the governor prohibited any person from working in the fields of healthcare, education, and state employment if that person has not been fully vaccinated by October 18th.

3.2 The Proclamation-- by its terms-- allows for religious and medical exemptions from receiving the vaccine. However, the Proclamation explicitly gives deference to local and state agencies regarding their management of the vaccine mandate.

3.3 Due to the deference that Governor Inslee has given to state agencies, private and public health care facilities, and private and public educational facilities; several agencies have decided to create their own mandates in order to circumvent the requirements under State and Federal law as well as ignore the individual protections afforded by both the State and Federal Constitutions.

3.4 On August 9, 2021, all Department of Social and Health Services employees received an email from Acting Secretary Don Clintsman informing them of the vaccination/exemption requirement in follow up to the Governor's August 9, 2021 announcement.

3.5 On August 14, 2021, Department of Social & Health Services through its Human Resources Division emailed employees asking employees to use an alternative process for religious accommodation than the one specifically in Governor's Proclamation 21-14. This email explains that the second vaccination dose must be administered no later than October 4th, 2021 to be fully vaccinated as of October 18, 2021.

3.6 On August 16, 2021 all DSHS employees received an email or letter from Human Resources providing details related to the vaccination/exemption requirement, including the process for requesting a medical or religious exemption.

COMPLAINT - 6

3.7 On August 22, 2021, Plaintiff Engle submitted her Religious Accommodation Request Form.

3.8 On September 10, 2021, Plaintiff Engle received an email in response to her Religious Accommodation request. DSHS  determined the request for a religious exemption was based on a sincerely held religious belief and included that she would be contacted in the next few days via email regarding the specifics of her accommodation.

3.9 On September 17, 2021, all DSHS employees received an additional email providing a reminder of the requirement.

3.10     On September 17, 2021, Plaintiff Engle received an email stating that if she has not already been contacted regarding her accommodation request she should expect to be contacted the week of September 20th - 24th.

3.11     On September 24th, 2021, Plaintiff Engle received an email saying that DSHS has determined Engle's request for a religious exemption is based on a sincerely held religious belief and that Engle's sincerely held belief prevents Engle from being vaccinated against COVID-19. Further, this email stated that the only option for Engle is potential reassignment, that the request for reassignment is due by close of business October 5, 2021, that if Engle chooses not to move forward with reassignment she needs to email her decision in writing within 3 business days of receiving the letter.

3.12     On September 28, 2021 Plaintiff Engle sent her resume to DSHS for reassignment in compliance with the prescribed 3 business days.

3.13     On September 28, 2021, Plaintiff Engle received a Notice of Intent to Separate for Non-disciplinary Reasons. DSHS stated "Pursuant to Washington Governor Inslee's Proclamation 21-14.1, all Department of Social and Health Services (DSHS) employees

COMPLAINT - 7

must be fully vaccinated against COVID-19 to engage in employment after October 18,

2021. Vaccination is not required for workers who are unable to receive the vaccine

because of a disability and/or medical condition or if the requirement conflicts with their

sincerely held religious beliefs, practice, or observance. Workers who are exempt from

the vaccine requirement may continue working if they have an approved accommodation

in place." DSHS then goes on to state, "In accordance with Washington Administrative

Code (WAC) 357-46-195, DSHS is considering separating you from employment, unless

you provide proof you will be fully vaccinated against COVID-19 as of October 18,

2021."

3.14    As of October 6, 2021, Plaintiff Engle still has not heard anything from HR

regarding if she has an approved accommodation in place (a reassignment which would

accommodate her religious convictions not to receive the vaccine.) As it is the last day

for Plaintiff Engle to get the second dose, much less a first dose to be fully vaccinated by

October 18, 2021. There is no way for Plaintiff Engle to comply with the mandate.

3.15    On August 11, 2021, all Washington State Patrol employees received an email

informing them of the vaccination/exemption requirement from Chief John R. Batiste.

3.16    On August 12, 2021, Plaintiff Jordan submitted a religious exemption request.

3.17    On August 24, 2021, Plaintiff Yeager submitted a Request Accommodation.

3.18    On September 5, 2021, Plaintiff Yeager received the first dose of a Covid-19

vaccine as he was told that if he did not get a vaccine he would be terminated.

3.19    On September 7, 2021, Plaintiff Yeager, after submitting his religious exemption,

after being told that he would be fired if he did not get the vaccine, and after he received

the first vaccine, received a reply from his employer with the answer to his Religious

COMPLAINT - 8

Exemption and Accommodation Request. "We have determined your request for a religious exemption is based on a sincerely held religious belief that prevents you from being vaccinated against COVID-19." He was informed that the only possible accommodation available was a reassignment and if reassignment was an option Yeager wished to explore he needed to send an email to the Employee Safety Team as soon as possible with his resume.

3.20    On September 9, 2021, Plaintiff Jordan received the answer to her Religious Exemption and Accommodation Request. "We have determined your request for a religious exemption is based on a sincerely held religious belief that prevents you from being vaccinated against COVID-19." Jordan was informed that the only possible  accommodation available would be a reassignment. If that was an option she wished to explore she needed to send an email to the Employee Safety team as soon as possible with her resume.

3.21    On September 22, 2021,  Plaintiff Yeager was informed that WSP doesn't have any vacant positions to "permanently accommodate."

3.22    On September 23, 2021,  Plaintiff  Jordan received a  "Notice to Separate for Non-disciplinary Reasons", stating that if Jordan does not show proof that she has been fully vaccinated against COVID-19 as of October 18, 2021 she will no longer be qualified to work under Governor Inslee's Proclamation 21.14.1.

3.23    On September 26, 2021, Plaintiff Yeager received the second dose of a Covid- 19 vaccine, despite his religious opposition to the treatment.

3.24    On September 23, 2021, Fire Chief Brian Schaeffer sent out a letter to his employees detailing issues arising from the City of Spokane's evaluation.

COMPLAINT - 9

3.25     Included in the letter is the following: "The City has concluded our evaluation and has determined that accommodating a religious or medical exemption for an unvaccinated EMT/Paramedic would result in undue hardship or burden and pose a direct threat to the safety and health of employees and others. For that reason, we cannot reasonably accommodate employees in their job of hire."

3.26     The letter further explains that "[d]ue to the inability to reasonably accommodate employees with religious/medical exemptions in their job of hire, we urge those employees to consider the possibility of reassignment to an open position."

3.27     However, if employees choose not to seek reassignment, the only other options are: essential function lay off, paid leave, leave of absence without pay, resignation, retirement, and separation. None of these options are reasonable accommodations.

3.28     On August 9, 2021, Governor Inslee issued an email notification to all State of Washington employees informing State of Washington employees of the new conditions for their continued employment. Additionally, Roger Millar, Secretary of Transportation, issued an all-WSDOT staff email reiterating the expectations outlined in Proclamation 21-14.

3.29     On August 20, 2021 , Jeff Pelton, Office of Human Resources & Safety Director, issued an all-WSDOT staff email informing staff of the process to submit a request for consideration of an exemption to the COVID-19 vaccination mandate due to a medical condition or sincerely held religious belief, practice, or observance.

3.30     On August 26, 2021, Plaintiff Charbonneau, an employee for the Washington State Department of Transportation submitted a religious exemption request form.

COMPLAINT - 10

Plaintiff received an Automatic reply from the WSDOT Exemption inbox as a confirmation receipt of a request or a question about the exemption process.

3.31    On August 29, 2021, all Washington State Department of Transportation (WSDOT ) Staff received an email to "provide some clarity" about the medical and religious exemption process.

3.32    On September 1, 2021, Washington State Department of Transportation sent an email saying they received Plaintiff Charbonneau's Religious Exemption request.

3.33    On September 8, 2021,  Jeff Pelton issued an all-WSDOT staff email with instructions on how staff were to validate their own COVID-19 vaccination status.

3.34    Also on September 8, 2021, All WSDOT staff received new information about the exemption process and deadlines stating that all exemption requests must be submitted by close of business Monday September 13, 2021.

3.35    On September 14, 2021, Plaintiff received a reply to his Religious Exemption request stating that the WSDOT has determined that the request is based on a sincerely held religious belief that prevents him from being vaccinated against Covid-19; however, they determined that no accommodation can be made in his current position.

3.36    On September 15, 2021,  Amy Scarton, Deputy Secretary of Transportation, issued an all-WSDOT staff email reminding staff to complete their vaccination validation by Friday, September 24, 2021.

3.37    Also on September 15, 2021, Plaintiff requested via email to meet to discuss the Exemption Request application results. WSDOT replied that day, setting a meeting for the next day.

COMPLAINT - 11

3.38     On September 16, 2021, Plaintiff Charbonneau met with Larry Larson, the

Assistant Regional Administrator, and Bobbi Collins Whitehead, Human Resource

Manager to discuss his request for reasonable accommodation.

3.39     The "Reasonable Accommodation Meeting Summary" email, sent September 24,

2021, details what was said during the meeting on the 16th of September. On the 16th,

Larry Larson contends that Plaintiff Charbonneau's duties include working in the field,

including on-site visits, meeting with the utility companies, conducting site visits, and

work with survey crews would require his presence in the workplace, which, per the

entity's policy, would necessitate the Plaintiff's vaccination. Mr. Larson further states

Plaintiff's presence is "unavoidable and/or unpredictable circumstances."

3.40     During the September 16, 2021 meeting, Plaintiff requested that Mr. Larson speak

with his manager that directly supervises his work to better evaluate his position and his

work, and what duties that entails. Instead, all of these determinations were based on the

supervisor of Plaintiff's manager with whom he has absolutely no contact. To Plaintiff's

knowledge, in the last 10 years, not a single on site visit has been conducted by anyone

holding his current position. In fact, the WSDOT is currently hiring a new transportation

engineer with the on-site duties specifically in mind because doing the on site work and

balancing the permit workload is impossible.

3.41     Plaintiff was promoted into this position in July of 2021. During the entirety of his

time in this position he has worked from home without being asked to work in the field,

do on site visits, or meet in person with anyone. Furthermore, this position was acquired

during the pandemic with the idea of social distancing and minimization of possible

transmission in mind.

COMPLAINT - 12

3.42     Due to the discussions management agreed to provide the following reasonable accommodations, "Upon receipt of your completed reassignment form, HR will conduct a good faith vacancy search to identify a vacant funded position which meets your qualifications" and "Upon receipt of your proof of becoming fully vaccinated, HR will contact you to consider possible accommodation options".

3.43     On September 17, 2021, all WSDOT Eastern Region Users received an email describing options for those wishing to retire, how they can proceed on vaccine validating, and accommodation reassignments. The Accommodation Reassignment section is as follows: "If you went through the exemption process and are awaiting additional information regarding potential accommodation, please know that someone will be in contact with you in the coming weeks to discuss whether reassignment to another position can be facilitated. In the interim, I encourage you to follow the process outlined in your Religious Exemption Denial Letter, complete the forms that were included in the links within the letter, and submit them as outlined to the appropriate mailbox as soon as possible. It is my understanding that any available positions will be awarded on a first-come first-serve basis."

3.44     Thus, even those who were given possible accommodations were told to behave as if their exemption letter was denied in whole.

3.45     Plaintiff did not sign a Reasonable Accommodation Reassignment Form provided because the first sentence states that this form was for those who can no longer perform the essential functions of his/her current position. Plaintiff can currently perform 100% of the essential functions of his position which has been done remotely his entire time in the position.

COMPLAINT - 13

3.46    On September 21, 2021, Amy Scarton issued an all-WSDOT staff email again reminding staff to complete their vaccination validation by noon on Friday, September 24, 2021, and gave forewarning that if they did not comply with the validation process, they would receive a pre-separation notice.

3.47    On September 22, 2021, Roger Millar, Secretary of Transportation, sent an email to all WSDOT staff sharing his goals for the agency and where he feels they are as an agency.

3.48    On September 23, 2021, Jeff Pelton issued an all-WSDOT staff email reminding staff to validate their vaccination status and notifying that pre-separation notices will be sent to any employee who did not validate their vaccination by noon on Friday, September 24, 2021.

3.49    On September 27, 2021, Plaintiff received an email from WSDOT stating that the Washington State Department of Transportation (WSDOT) intends to separate him through a non-disciplinary dismissal from his position effective at the end of his shift on October 18, 2021, pursuant to Washington Governor Inslee's Proclamation 21-14.1.

3.50    On September 29, 2021, an email was sent to all WSDOT staff as a reminder of the October 4, 2021 vaccination deadline for the second dose of a vaccine to be fully vaccinated by the October 18, 2021 mandate deadline.

## IV.    FIRST CAUSE OF ACTION: Injunctive Relief Against Governor Inslee; Damages where proved against non-state defendants

### Violation of 42 U.S.C. 1983

4.1. All prior allegations in this Complaint are incorporated herein by this reference.

COMPLAINT - 14

4.2  A claim under Section 1983 of the Civil Rights Act arises when a person, acting under color of state law, causes a plaintiff to be deprived of rights secured by the federal constitution and/or laws.

4.3 Governor Inslee, acting under color of state law, and administrators and heads of departments herein named as defendants, have caused plaintiffs to be deprived of rights secured by the federal Constitution and by various statutes, including but not limited to the Americans with Disabilities Act. Plaintiffs' First, Fifth and Fourteenth Amendment rights, plaintiffs' Contracts Clause rights, and other rights secured by the federal constitution and laws.

4.4 As a proximate result of defendants' actions, plaintiffs sustained and continue to sustain injuries in amounts to be proved at time of trial.  For purposes of *Ex Parte Young* and the Eleventh Amendment, plaintiffs seek only equitable remedies and attorney fees (under 42 U.S.C. 1988) against Governor Inslee and any other "arm of the state" defendant herein.

## V.    SECOND CAUSE OF ACTION

**Governor's Proclamation is Ultra Vires and Void, Without Legal Effect; Injunctive Relief Sought**

*A.    Wrongful Delegation of Legislative Powers and Improper Execution of Emergency Powers*

5.1  Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

5.2 "The legislature, in order to insure continuity of state and local governmental operations in periods of emergency resulting from a catastrophic incident or enemy attack, shall have the power and the duty, immediately upon and after adoption of this amendment, to enact legislation providing for **prompt and temporary** succession to the powers and duties of public offices of whatever nature and whether filled by election or appointment, the

COMPLAINT - 15

incumbents and legal successors of which may become unavailable for carrying on the powers and duties of such offices; the legislature shall likewise enact such other measures as may be necessary and proper for ensuring the continuity of governmental operations during such emergencies." WASH. CONST. art. I, § 42 (*emphasis added*).

5.3 State legislative delegation of power is inherently limited. *Diversified Inv. P'ship v. Dep't of Soc. & Health Servs.*, 113 Wn.2d 19, 24, 775 P.2d 947, 950 (1989): These non-delegable powers include the power to enact, suspend, and repeal laws, and the power to declare general public policy. *Id.*

5.4 In the matter at hand, the statute in question is Wash. Rev. Code § 43.06.220, which outlines the extent of the governor's powers during a state of emergency. This statute allows the governor, via proclamation, to: define crimes and provide for criminal punishment (Wash. Rev. Code § 43.06.220 (5)); suspend statutory rights (Wash. Rev. Code § 43.06.220 (2)); and unilaterally declare general public policy through prohibition (Wash. Rev. Code § 43.06.220 (1)). While such delegations as this may be necessary and even unavoidable in times of actual crisis, the duration and scope of the gubernatorial proclamations here far exceeds crisis powers needed when it is improvident to expect the legislature to assemble and vote. Yet the legislature's duty to exercise the legislative powers of this State cannot be given away. To that end, a statute even delegating emergency power remains subject to the constitutional requirements of all legislation in this State. Any such statute must be complete and self-contained when it leaves the hands of the Legislature. *See State ex rel. Hunt v. Tausick*, 64 Wash. 69, 79, 116 P. 651 (1911).

5.5 Wash. Rev. Code § 43.06.220 fails this test insofar as it was incomplete when it left the hand of the legislature. There are no conditions precedent to the declaration of such an emergency; nor is there an identified point of termination (though the legislature must renew certain waivers of law pursuant to Wash. Rev. Code § 43.06.220 (4)). Rather, the governor may simply rely on this power so long as he: 1) declares the state of emergency; and 2) does not terminate the state of emergency. Wash. Rev. Code § 43.06.220 (1). This exceptionally broad and self-defining delegation is unconstitutional.

5.6 Not only does this statute fail insofar as it was incomplete when it left the hand of the legislature; it also fails constitutional muster as it does not limit emergency powers to the "prompt and temporary" timeline prescribed by the State Constitution; rather, the timeline enacted by the statute is simply that which the governor deems necessary in his own discretion. This constitutional failure-- performed by the governor, and enabled by the legislature-- is further evidenced by the fact that, at the time of drafting, Washington is in its nineteenth consecutive month of emergency, which speaks to a lack of promptness and temporariness.

5.7 Likewise, the governor's action, and the legislature's inaction, frustrate the purpose of WASH. CONST. art. I, § 42 insofar as the Washington Human Rights Commission currently has a several-month waiting period due to the overwhelming number of employees-- both private and public-- who are being forced out of their jobs as a result of the governor's most recent proclamation, and its discriminatory impact against disabled and religiously-opposed individuals.

5.8 Likewise, the Governor's Mandate, by reducing already understaffed schools, conflicts with the "paramount duty of the State" found at WASH. CONST. art. IX, §§ 1, 2.

COMPLAINT - 17

5.9 "It is equally true that the state may invest local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and the public safety. The mode or manner in which those results are to be accomplished is within the discretion of the state, subject, of course, so far as Federal power is concerned, only to the condition that *no rule prescribed by a state, nor any regulation adopted by a local governmental agency acting under the sanction of state legislation, shall contravene the Constitution of the United States, nor infringe any right granted or secured by that instrument.* A local enactment or regulation, even if based on the acknowledged police powers of a state, must always yield in case of conflict with the exercise by the general government of any power it possesses under the Constitution, or with any right which that instrument gives or secures. *Gibbons v. Ogden*, 9 Wheat. 1, 210, 6 L. ed. 23, 73; *Sinnot v. Davenport*, 22 How. 227, 243, 16 L. ed. 243, 247; *Missouri, K. & T. R. Co. v. Haber*, 169 U. S. 613, 626, 42 L. ed. 878, 882, 18 Sup. Ct. Rep. 488.

5.10    Plaintiffs are entitled to declaratory and injunctive relief to protect their federally-secured rights against self-proclaimed intrusion, and damages where lawfully available for the intrusions experienced to date.

*B. Impermissible Interference With and Excessive Burdens Upon Interstate Commerce*

5.11    Furthermore, the governor's Proclamation and the above-named Defendants overstep their constitutional bounds insofar as they-- under the cover of exerting state police powers-- substantially prohibit or burden either foreign or interstate commerce. *Hannibal & St. J.R. Co. v. Husen*, 95 U.S. 465, 472, 24 L. Ed. 527 (1877). Article I, Section 8, clause 3 of the United States Constitution prohibits excessive burdens upon

COMPLAINT - 18

interstate commerce.  This lawsuit touches and concerns interstate commerce in both tangible and intangible ways.

5.12      This burdensome prohibition occurs in the form of adverse employment action against Plaintiffs, some of whom live in Idaho, while working in greater Spokane. As workers who cross state lines on a daily basis, these Plaintiffs are inherently engaging in the flow of interstate commerce. Regulation of such individuals-- those who engage in the flow of interstate commerce--is the sole prerogative of the federal government, not the states. *Id; see also,* U.S. CONST. art. I, § 8, cl. 3.  The Dormant Commerce Clause protects against undue burdens on interstate commerce, which this may be in several respects, such as by depriving Spokane-area health care institutions of sufficient staff, depriving the Washington State Patrol of staff necessary to provide safe highways, and in other ways that will only surface after the anticipated terminations occur. Commerce Clause violations may be redressable under 42 U.S.C. 1983, and plaintiffs seek such redress.

## VI.     THIRD CAUSE OF ACTION

**Deprivation of Religious Freedom, U.S. CONST., Amend. I, WASH. CONST. Art. I, Sec. 11**

**and the Equal Protection Clause of the 14th Amendment to the federal constitution**

**(declaratory and injunctive relief).**

6.1 Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

6.2 The Governor's mandate is directly in opposition to WASH. CONST. art. I, § 11. "[n]o religious qualification shall be required for any public office or employment." Using the contrapositive of this Constitutional mandate, it should be inferred that no religious belief may disqualify one from holding public office or employment. As such, the Governor's

COMPLAINT - 19

action-- which has been expanded upon by the public employer Defendants-- fails insofar as it creates an unlawful faith-based barrier to gainful employment in some of society's most necessary and revered positions, such as firefighters, police officers, and healthcare workers.

6.3 The above-listed defendants, or their chief administrators who—in their roles as employers—have violated the equal protection clause of the 14th Amendment of the United States Constitution. It is well-established law that States do not escape the strictures of the Equal Protection Clause in their role as employers. See, e.g., *New York City Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *Harrah Independent School Dist. v. Martin,* 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979).

6.4 In the matter at hand, the policy is facially neutral; but it impairs the free exercise of the religious beliefs of those who have sincere, faith-based opposition to the vaccine; likewise, the policy of terminating all non-vaccinated state workers implicates constitutional rights regarding due process, the Contract Clause, and governmental takings of property, in addition to First Amendment Free Exercise rights. As such, the State's vaccination mandate should be reviewed under strict scrutiny.

6.5 In order to survive a strict scrutiny level of review in a free exercise of religion case, the government's policy must: (a) be supported by a compelling state interest; and (b) employ the least restrictive means necessary for accomplishing the goal in question.

6.6 Policy experts explain: "evidence for the effectiveness of mandatory vaccinations is mixed. A causal link cannot truly be attributed as the impact of the legislation cannot be decoupled from the potential impact of other concurrent tools, such as education and

COMPLAINT - 20

increased access. Conversely, there is also evidence that points to the ineffectiveness of mandatory vaccination and even to their potential harmful impacts on underserved communities." Khor Swee Kheng & Nurul Ezzaty Hasbullah, *Should COVID-19 Vaccines Be Mandatory?*, Institute of Strategic and International Studies, 2020, https://www.isis.org.my/wp-content/uploads/2020/12/ISIS-MY_PolicyBrief_Should-COVID-19-Vaccines-Be-Mandatory_FINAL.pdf

6.7 Education appears to be the policy with the greatest likelihood of success. As alternative and less restrictive means are available, this Proclamation must fail.

6.8 These violations of the Equal Protection Clause are actionable under 42 U.S.C. 1983, proximately causing injuries and damages to be proved at time of trial, except that, for purposes of the Eleventh Amendment and Sec. 1983, no damages are sought from the governor or any "arm of the state" named as a defendant herein.

### *Jacobson* Ostensibly Forbids Enforcement

6.9 Preservation of public health is one of the most compelling state interests that exists. However, even this worthy endeavor does not grant to government actors an absolute right to impose their will against the liberty of those who would suffer disproportionate adverse impacts, if they were subjected to the regulation. See *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 39, 25 S. Ct. 358, 366, 49 L. Ed. 643 (1905).

6.10     Simply put, *Jacobson* dealt with an inappropriate plaintiff, who contended that he should not have to receive the smallpox vaccine due to personal preference and fear-- neither of which gives rise to a particularized justification to escape the requirements of the statute in question. Contrarily, the Plaintiffs in the case presently before the Court can

COMPLAINT - 21

demonstrate particularized harm, which the Court in *Jacobson* explicitly stated the law

must avoid. *Id.*

6.11    *Jacobson* is the leading case to speak on the issue of compulsory vaccination.

While the Court in *Jacobson* held in favor of the state's vaccine mandate, there was a

caveat: "regulations requiring vaccines for individuals should be so limited in their

application as not to lead to injustice, oppression, or an absurd consequence. It will

always, therefore, be presumed that the legislature intended exceptions to its language

which would avoid results of this character." *Id.* However, the Governor's Proclamation

herein, while it provided for potential exemptions, has led to such disturbing outcomes as

proclaimed denial of unemployment benefits, gag orders to employees, and other

violations of rights and other harms.

6.12    The Court in *Jacobson* established a results-based test to determine whether a

vaccine mandate could be applied to an individual. *Id.* If the results of the regulation,

when applied to an individual, would be unjust, oppressive, or absurd, the Court states

that the law should be implied to exclude from its purview such an individual. *Id.* The

present Plaintiffs seek relief for unlawful exclusion from public employment on the basis

of religion, the Americans With Disabilities Act, and violations of the WLAD--all of

which are indicative of oppression. The plaintiffs also seek relief for negligent infliction

of emotional distress arising out of a religious battery, violations of the Contracts Clause,

and the implementation of overly-harsh penalties and fines-- all of which are indicative of

injustice. And lastly, those who are protected by the ADA seek relief from being forced to

receive a vaccine against their doctors' orders, which is indicative of the absurdity of the

current situation.

COMPLAINT - 22

6.13     Due to the issues discussed herein, Plaintiffs are entitled to declaratory and
injunctive relief, and to the extend proved at the time of trial, damages arising in
accordance with 42 USC §§1983

## VII.    FOURTH CAUSE OF ACTION

### Procedural Due Process

7.1 Essential elements of procedural due process include notice and a meaningful opportunity
to be heard. "A meaningful opportunity to be heard means 'at a meaningful time and in a
meaningful manner.'" *Didlake v. Washington State*, 186 Wash. App. 417, 426 (2015);
*Board of Regents v. Roth*, 408 U.S. 564 (1972). To determine what procedural protections
due process requires in a particular situation, a court must consider three factors: (1) the
private interest affected, (2) the risk that the relevant procedures will erroneously deprive
a party of that interest, and (3) any countervailing governmental interests involved." *Id.*

7.2 Public employees have a property interest in their position which cannot be terminated
without due process, which includes and requires a right to a hearing. *Board of Regents v.
Roth*, 408 US at 564 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.
Ct. 1487, 84 L. Ed. 2d 494 (1985).

7.3 Defendants Washington State Department of Transportation, Spokane Fire Department,
City of Spokane, and DSHS have violated procedural due process as their employees have
not been afforded a meaningful opportunity to be heard. There have been blanket denials
of exemptions and accommodations, and many Plaintiffs have received  group emails
from their employer relating to these denials. Such non-individualized, wide-reaching
action does not even suggest that a facade of meaningful hearings exists. Logistically, it is

COMPLAINT - 23

virtually impossible that an employer could have a single response that adequately reflects the individualized nature of requests for accommodation from such large quantities of employees.

7.4 As a proximate result of defendants' violations, plaintiffs have incurred and will incur damages to be proved at time of trial, excepting only those damages unavailable under the Eleventh Amendment and *Ex Parte Young*.

### VIII.   FIFTH CAUSE OF ACTION

#### Substantive Due Process

8.1 "Substantive due process 'forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (2009); *Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir.1998).

8.2 This constitutional right to privacy includes autonomy over one's medical care, and includes the right to refuse treatment.

8.3 No person shall be deprived of life, liberty, or property, without due process of law. Wash. Const. art. I, § 3; U.S. Const., Amends. V and XIV.

8.4 The Plaintiffs each face deprivation of their life, liberty, or property as a direct consequence of the Governor's Mandate which was not properly or legally enacted, and which is not consistent with their rights to substantive due process.

8.5 Additional liberty interests, including religious freedoms and free speech, are implicated by the Mandate and by actions taken to carry out the mandate.

COMPLAINT - 24

8.6 As a proximate result of defendants' violations, plaintiffs have incurred damages provable at trial. Plaintiffs also seek declaratory and injunctive relief.  Plaintiffs do not, at any point, seek damages precluded by the Eleventh Amendment.

## IX.     SIXTH CAUSE OF ACTION

### Taking and Violations of the Contracts Clause

*Taking of Property Without Just Compensation*

9.1 "No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner." U.S. CONST. art. 5.

9.2 [A] police power measure can violate Article I, Section 16 of the Washington State Constitution or the Fifth Amendment to the United States Constitution and thus be subject to a takings challenge when (1) a regulation affects a total taking of all economically viable use of one's property." *Woods View II, LLC v. Kitsap County*, 188 Wash. App. 1, 39, 352 P.3d 807, 826 (2015); See *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 433, 102 S.Ct. 3164 (1982).

9.3 Contracts are property within the meaning of the Fifth Amendment, and if taken for public use, Due Process, coupled with the implications of the Takings Clause, mandates that the government is liable for just compensation. See *Omnia Commercial Co. v. United States*, 261 U.S. 502, 508, 43 S. Ct. 437, 437, 67 L. Ed. 773 (1923), *Long Island Water Supply Co. v. Brooklyn*, 166 U. S. 685, 690, 17 Sup. Ct. 718, 41 L. Ed. 1165; *Cincinnati v. Louisville & Nashville Ry. Co.*, 223 U. S. 390, 400, 32 Sup. Ct. 267, 56 L. Ed. 481).

COMPLAINT - 25

9.4 Here, the government has explicitly relied upon the public purpose of public safety to justify apprehension and destruction of these employment contract rights. *See Broadly* Proclamation 21-14.2.

9.5 In the matter at hand, the agency heads-- through their interpretations of the Governor's proclamation-- have enacted regulations that effect a total taking of all economically viable uses of the employee-Plaintiffs' contractual property. This is to say that the Defendants have not only terminated the plaintiffs' employment contracts, but have also advised and threatened that individuals will not receive unemployment or other severance benefits if their employment is terminated due to a medical inability, or due to a religion-based unwillingness to vaccinate.

*Threats to Terminate State Employees Without Unemployment Benefits Constitute a Violation of the Equal Protection, Due Process, and Contracts Clauses*

9.6 In interpreting the Contracts Clause, Courts have held that a statute itself may be treated as a contract when language and circumstances evidence legislative intent to create private rights of a contractual nature, which are enforceable against the state. *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 17, 97 S. Ct. 1505, 1515, 52 L. Ed. 2d 92 (1977).

9.7 Wash. Rev. Code § 50.10.20, which regulates the issuance of unemployment benefits in the state of Washington, effectively serves as a contract between the State and its citizens. Here, the statutory right to the benefits of an unemployment scheme are enforceable against the state-- just as the contractual rights of a grantee are enforceable against the grantor. *Id.*

9.8 A State could not "adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them." *Blaisdell*, 290 U.S., 439, 54 S.Ct. at

240. Legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption. *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 22, 97 S. Ct. 1505, 1517–18, 52 L. Ed. 2d 92 (1977).

9.9 Courts have recognized police power and the power of eminent domain among those aspects of State power that cannot be "contracted away." *Id.*

9.10    The subject Proclamation and the actions taken to put it into effect comprise a violation of the Contracts Clause and are nullities to that extent. Plaintiffs are entitled to a declaratory judgment and other remedies consistent with the Eleventh Amendment to prevent and protect against unconstitutional assumptions of legislative power and unconstitutional impacts on plaintiffs' contract rights.

## X.    SEVENTH CAUSE OF ACTION

### Americans With Disabilities Act (ADA)

10.1    Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in … employment." Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(a) (2012).

10.2    Discrimination against a qualified individual based on disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an … employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." § 12112(b)(5)(A).

COMPLAINT - 27

10.3     A covered entity means "an employer, employment agency, labor organization, or joint labor-management committee." § 12111(2). An employer is "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." §12111(5)(A). An employee is "an individual employed by an employer." § 12111(4).

10.4     In order to establish a prima facie case of discrimination under the ADA, these three elements must be met: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of [his] disability." *Samper v. Providence St. Vincent Med. Ctr.,* 675 F.3d 1233, 1237 (9th Cir. 2012).

10.5     Disability is defined as "(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." § 12102(1)(A)-(C).

10.6     "A covered entity is … not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong." 29 C.F.R. app. pt. § 1630.2(o)(4) (2018).

10.7     A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." § 12111(8).

10.8     Essential functions are "the fundamental job duties of the employment position the individual with a disability holds." § 1630.2(n)(1); *Humphrey v. Mem'l Hosps. Ass'n, 239*

COMPLAINT - 28

*F.3d 1128, 1137* (2001) (physical attendance as a medical transcriptionist is not an essential function).

10.9     A covered entity must "make reasonable accommodation[s] to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." § 1630.9(a).

10.10     A reasonable accommodation "may include job restructuring, part-time or modified work schedules … and other similar accommodations for individuals with disabilities." § 12111(9)(B).

10.11     To determine a reasonable accommodation "it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." § 12111(o)(3).

10.12     The duty to accommodate is a continuous duty "that is not exhausted by one effort." *Humphrey*, 239 F.3d at 1138 (held that the defendant had a duty to explore further accommodations to reasonably accommodate plaintiff's disability, since the interactive process must use cooperative problem-solving).

10.13     If a reasonable accommodation causes an undue hardship, which is "an action requiring significant difficulty to expense," then the covered entity does not need to make a reasonable accommodation. § 12111(10)(A).

10.14     When "determining whether an accommodation would impose an undue hardship on a covered entity," a few factors may be looked at. § 12111(10)(B). These factors

COMPLAINT - 29

include: the nature and cost of the accommodation, the impact upon the facility, the

finances of the covered entity, and the type of operation of the entity. § 12111(10)(B)(i)-

(iii).

10.15       "The ADA treats the failure to provide a reasonable accommodation as an act of

discrimination if the employee is a qualified individual, the employer receives adequate

notice, and a reasonable accommodation is available that would not place an undue

hardship on the operation of the employer's business." *Snapp v. United Transp. Union,*

889 F.3d 1088, 1095 (9th Cir. 2018) cert. denied sub nom. *Snapp v. Burlington N. Santa*

*Fe Ry. Co.,* —— U.S. ——, 139 S.Ct. 817, 202 L.Ed.2d 577 (2019)(citing 42 U.S.C. §

12112(b)(5)(A) ).

10.16       Defendants have taken positions that require adverse employment actions against

employees covered by the ADA. In the case of the City of Spokane, the action (Chief

Schaefer's September 2021 memo) effectuates official policy of the City, and therefore

the City is a "person" for Sec. 1983 purposes. Such remedies as are allowed by law

against the defendants, principally herein declaratory and injunctive relief, should be

awarded to plaintiffs.

## XI.    EIGHTH CAUSE OF ACTION

### Violation of the Washington Law Against Discrimination (WLAD)

11.1       Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

11.2       Under the Washington Law Against Discrimination, it is unlawful for any

employer to refuse to hire or to "discharge or bar any person from employment because

of…creed … or the presence of any sensory, mental, or physical disability" Wash. Rev.

Code 49.60.180 (2).

COMPLAINT - 30

11.3     "It is an unfair practice for any employer [t]o discriminate against any person in compensation or in other terms or conditions of employment because of ... creed ... or the presence of any sensory, mental, or physical disability." Wash. Rev. Code § 49.60.180 (3).

11.4     "[A] plaintiff establishes a prima facia claim under Washington Law Against Discrimination (WLAD) of failure to accommodate religious practices by showing that (1) he or she had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he or she informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual discriminatory treatment." *Kumar v. Gate Gourmet Inc.*, 180 Wash.2d 481, 501, 325 P.3d 193, 203 (2014).

11.5     "It is an unfair practice for any employer ... to fail or refuse to make reasonable accommodation for an able worker with a disability." Wash. Admin. Code § 162-22-025(2) (2018).

11.6     "To set out a prima facie case for a failure to reasonably accommodate a disability, the plaintiff must show that (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job, and either (a) the impairment had a substantially limiting effect on the individual's ability to perform the job, the individual's ability to apply or be considered for a job, or the individual's access to equal benefits, privileges, or terms or conditions of employment or (b) the employee put the employer on notice of the impairment's existence and medical documentation established a reasonable likelihood that engaging in the job functions without an accommodation would create a substantially limiting effect; (2) the employee

COMPLAINT - 31

was qualified to perform the essential functions of the job in question; (3) the employee

gave the employer notice of the abnormality and its accompanying substantial limitations;

and (4) upon notice, the employer failed to affirmatively adopt measures that were

available to the employer and medically necessary to accommodate the abnormality."

*Gamble v. City of Seattle*, 6 Wash. App. 2d 883, 888-89, 431 P.3d 1091, 1094 (2018).

11.7    "Reasonable accommodation means measures that … enable the proper

performance of the particular job held or desired." §162-22-065(1)(b) "Possible examples

of reasonable accommodation may include … adjustments in job duties, work schedules,

or scope of work." § 162-22-065(2)(a).

11.8    Plaintiffs herein include individuals who are within the covered group, who have

requested accommodation and been denied, de facto if not de jure, any form of

accommodation that allows them to pursue their careers, or no accommodations at all.

These plaintiffs will establish a prima facia case of discrimination through a failure to

accommodate. Such a cause of action exists because the affected plaintiffs have a

sincerely held religious belief that receiving the COVID-19 vaccine would violate

essential tenets of their belief systems. The fact that Plaintiffs collectively cite differing

reasons is irrelevant, as all have given thoughtful consideration to their religious beliefs,

arrived at the same conclusion that they cannot faithfully receive the vaccine, and been

unlawfully denied reasonable accommodations, thus giving rise to applicable damages

under the WLAD.

## XII.    NINTH CAUSE OF ACTION

### Cruel Punishment

12.1    Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

COMPLAINT - 32

12.2    According to the WASH. CONST. art. I, § 14, cruel punishment shall not be inflicted.

12.3    When a state of emergency is proclaimed by the Governor, "[a]ny person willfully violating any provision of an order issued by the governor under this section is guilty of a gross misdemeanor." Wash. Rev. Code § 43.06.220(5).

12.4    By issuing a blanket statement that includes every aspect of Governor Inslee's ever-changing orders, this statute provides for cruel punishment that impacts a significant portion of the Washington population.

12.5    This statute violates the Washington State Constitution. Orders causing people to lose their jobs because they cannot physically endure the vaccine, or because their sincere religious beliefs preclude vaccination, constitute cruel punishment in violation as well.

12.6    Plaintiffs are entitled to declaratory and injunctive relief protecting them from such arbitrary and cruel punishment.

### XIII.    TENTH CAUSE OF ACTION

#### Negligent Infliction of Emotional Distress

13.1    "A plaintiff may recover for negligent infliction of emotional distress if she proves negligence, that is, duty, breach of the standard of care, proximate cause, and damage, and proves the additional requirement of objective symptomatology." *Strong v. Terrell*, 147 Wash. App. 376, 387, 195 P.3d 977, 982 (2008) (citing *Kloepfel v. Bokor*, 149 Wash.2d 192, 198, 66 P.3d 630, 633 (2003).

13.2    "[T]o establish a case of negligent infliction of emotional distress, a claimant must prove that her emotional distress is accompanied by objective symptoms and the 'emotional distress must be susceptible to medical diagnosis and proved through medical

COMPLAINT - 33

evidence.'" *Strong*, 147 Wash. App. at 388, 195 P.3d at 983 (quoting *Kloepfel*, 149 Wash.2d at 197, 66 P.3d 630).

13.3     In *Kumar*, the court decided that implementing a meal policy that imposed a risk to the employees' religious well-being could possibly rise to the level of a claim for negligent infliction of emotional distress. See *Kumar*, 180 Wash. 2d at 506, 325 P.3d at 205.

13.4     In this case, many plaintiffs have endured the unconstitutional orders issued and have even become vaccinated against their will.  These orders constitute negligent infliction of mental-emotional distress.

## XIV.   ELEVENTH CAUSE OF ACTION

### Battery

14.1     Plaintiffs re-allege all allegations of this Complaint as if fully set forth herein.

14.2     "A battery is an intentional and unpermitted contact with the plaintiff's person." *Kumar v. Gate Gourmet Inc.*, 180 Wash.2d 481, 504, 325 P.3d 193, 204 (2014).

14.3     "A defendant is liable for battery if (a) he [or she] acts intending to cause a harmful or offensive contact with the [plaintiff or a third party], or an imminent apprehension of such contact, and (b) a harmful or offensive contact with the [plaintiff] directly or indirectly results" *Id.*

14.4     "A bodily contact is offensive if it offends a reasonable sense of personal dignity." *Id.*

14.5     "Thus, an offensive contact does not have to result in physical injury to constitute a battery." *Id.*

COMPLAINT - 34

14.6 "The contact element of a battery is simply a harmful or an offensive contact with the plaintiff; thus, a battery can occur where, for example, the plaintiff comes in harmful contact with the ground but never touches the defendant." *Id.* at 504, 325 P.3d at 204-05; See *Garratt v. Dailey*, 46 Wash.2d 197, 200–01, 279 P.2d 1091, 1093-94. (1955).

14.7 "Force is not an element of battery." *Kumar*, 180 Wash.2d at 504, 325 P.3d at 205.

14.8 "The intent element of battery is satisfied where a defendant knows to a substantial certainty that his actions will result in the harmful or offensive touching." *Id.* at 504-05, 325 P.3d at 205.

14.9 "A person therefore commits a battery where he or she performs '[a]n act which, directly or indirectly, is the legal cause of a harmful contact with another's person' and that act is intentional, is not consented to, and is otherwise unprivileged." Id. at 505, 325 P.3d at 205 (quoting *Garratt*, 46 Wash.2d 197, 200, 279 P.2d 1091).

14.10 "These elements are met where the plaintiff's consent to the contact 'is procured by fraud or duress.'" *Kumar*, 180 Wash.2d at 505, 325 P.3d at 205 (quoting *Garratt*, 46 Wash.2d 197, 201, 279 P.2d 1091).

14.11 Economic duress "is a species of duress involving involuntary action, in which one is compelled to act against his will in such a manner that he suffers a serious business loss or is compelled to make a monetary payment to his detriment." *Dickinson v. Winther,* 151 Wash. App. 1041, 5 (2009) (quoting *Starks v. Field*, 198 Wash. 593, 598, 89 P.2d 513, 515 (1939); see also *Barker v. Walter Hogan Enter., Inc.*, 23 Wash. App. 450, 452, 596 P.2d 1359, 1360 (1979).

COMPLAINT - 35

14.12     "To establish a claim of economic duress, the party asserting duress must produce evidence showing that (1) the offending party applied the immediate pressure; (2) the offending party caused or contributed to the underlying circumstances that led to the victim's vulnerability; and (3) the 'immediacy of the situation render[ed] impractical any court action by which the victim might avoid the burden of either of the detrimental choices.'" *Dickinson*, 151 Wash. App. at 5 (2009) (quoting *Barker*, 23 Wash. App. at 453, 596 P.2d at 1360).

14.13     Economic duress hinges on the meaning of involuntary and compelled. "Implicit in both words is the concept that the immediacy of the situation renders impractical any court action by which the victim might avoid the burden of either of the detrimental choices." *Barker,* 23 Wash. App. at 453, 596 P.2d at 1360. See *Sunset Copper Co. v. Black*, 115 Wash. 132, 196 P. 640 (1921).

14.14     Economic duress, "based on the theory of potentially serious business loss imposed by oppressive conduct can be successfully invoked only if the victim can prove both that the offending party applied the immediate pressure and also that he caused or contributed to the underlying circumstances which led to the victim's vulnerability. *Barker*, 23 Wash. App. at 453, 596 P.2d at 1360.

14.15     Battery exists in this case because the state, by mandating the Covid-19 vaccination, creates an intentional imminent harmful and offensive contact towards employees who would otherwise not choose to receive it of their own free choice.

14.16     By not respecting that personal freedom of choice, the state has violated the Plaintiff's reasonable sense of personal dignity, which meets the offensive standard.

COMPLAINT - 36

14.17    There are Plaintiffs that have already been vaccinated or received their first dose as a condition of keeping their livelihoods. While many other Plaintiffs have not yet been vaccinated, there is a substantial certainty, under the current mandate that requires most employees to be vaccinated by October 18, 2021, that the offensive contact will occur.

14.18    The elements are further met when the Plaintiff's consent to the contact in question is procured by fraud or duress.

14.19    Such duress exists in the form of economic duress.

14.20    The elements to an economic duress claim have been met. Being arbitrarily forced to endure an unwanted vaccination under economic duress is a form of battery.

14.21    Defendant employers, at the direction of the state and the governor, are mandating the immediate vaccination of the Plaintiff employees. If the employees choose not to comply, they will lose not only the careers they have dedicated their lives to, but also the benefits that come along with such jobs, including retirement funds and health insurance.

14.22    Defendant employers have both caused and contributed to Plaintiff's vulnerability here for the same aforementioned reasons.

14.23    Because of the time restraints put in place by the vaccine mandate, Plaintiffs have not been able to seek relief from the court without putting their careers in jeopardy.

14.24    For the aforementioned reasons, Defendant's actions constitute a battery under both the traditional and economic duress theories.

## XV.    PRAYER FOR RELIEF

Based upon the foregoing, plaintiffs pray for relief as follows:

15.1    Injunctive and declaratory relief that the Proclamation violates federally secured rights and may not be enforced consistently with federal law;

COMPLAINT - 37

15.2      Injunctive and declaratory relief that orders issued by defendant heads of departments are also violative of federal law and cannot proceed consistently with federally-secured rights;

15.3      Injunctive relief under 42 U.S.C. 1983;

15.4      Damages where allowable under the Eleventh Amendment for violations of 42 U.S.C. 1983;

15.5      Attorney fees and costs under 42 U.S.C. 1988;

15.6      In exercise of the Court's Supplemental Jurisdiction, damages, injunctive relief and declaratory relief as set forth herein for violations of state law, including violations of the WLAD, Separation of Powers, and other state laws as set forth hereinabove;

15.7      In exercise of the Court's Supplemental Jurisdiction, such costs and plaintiffs' attorney's fees as may be provided by State law; and

15.8      Such other and further relief as to the court is just and equitable.

DATED this 5th day of October 2021.

Application to EDWA pending

GRANT WOLF  WSBA 57368
WOLF LEGAL GROUP
**400 S. JEFFERSON ST. SUITE 109**
**SPOKANE, WA, 99204**
**Phone: (502)681-8655**
**grant@law-lynxnetwork.com**

MILTON G. ROWLAND  WSBA 15625
LAW OFFICE OF MILTON G. ROWLAND
**1517 W. BROADWAY AVE.**
**SPOKANE, WA, 99201**
**Phone: (509)327-5094 Fax:(509)252-5094**
**milt@spokanelitigation.com**

COMPLAINT - 38