UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRAVIS WISE, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>GOVERNOR JAY INSLEE, et al.,<br><br>　　　　　　　Defendants. | NO. 2:21-CV-0288-TOR<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION |

BEFORE THE COURT is Plaintiffs' Motion for Temporary Restraining Order/Preliminary Injunction (ECF No. 13). This matter was submitted for consideration with oral argument on October 22, 2021. Milton Rowland and Grant Wolf appeared on behalf of Plaintiffs. Andrew Hughes appeared on behalf of the State Defendants and Chad Mitchell, Liz Kennar and David Smith appeared on behalf of Defendant Schaeffer. The Court has reviewed the record and files herein, considered the parties oral arguments, and is fully informed. For the reasons discussed below, Plaintiffs' Motion for Temporary Restraining Order (ECF No. 13) is DENIED.

ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION ~ 1

# BACKGROUND

This matter relates to Governor Inslee's Proclamation 21-14 *et seq.* (the "Proclamation"), concerning mandatory vaccination for educators, healthcare workers, and state employees and contractors. The Proclamation prohibits affected employees from performing work after October 18, 2021, if they are not fully vaccinated. ECF No. 45-5 at 5. The Proclamation does not create freestanding exemptions but acknowledges that antidiscrimination statutes permit certain individuals to avoid the vaccination requirement if they are entitled to "disability-related accommodations" or "sincerely held religious belief accommodations." *Id.* (citing the Americans with Disabilities Act of 1990 ("ADA"), the Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964, the Washington Law Against Discrimination, and any other applicable law).

The Proclamation currently affects approximately 681,000 workers in Washington State. ECF No. 38 at 12. Proclamation 21-14 was initially issued on August 9, 2021 and applied to certain state agency and healthcare workers. *Id.* Subsequent Proclamation 21-14.1 was issued on August 20, 2021 and extended the vaccination requirement to workers in educational settings. *Id.* Proclamation 21-14.2 was issued on September 27, 2021 and further extended the vaccination requirement to on-site contractors working with certain state entities. *Id.*

The named Plaintiffs in the present litigation are employed by various entities affected by the Proclamation, including multiple state agencies, a local government entity, and a healthcare provider. ECF No. 26 at 4–6, ¶¶ 2.5.2–2.5.23. Generally, Plaintiffs oppose the vaccine requirement, although their individual reasons for opposition vary. *See e.g.*, ECF Nos. 18 at 3, ¶ 3; 23 at 2, ¶ 5. Plaintiffs filed a Complaint on October 6, 2021, alleging the Proclamation violates state and federal law. ECF No. 1. Plaintiffs filed an Amended Complaint on October 15, 2021, which is the operative complaint. ECF No. 26. Plaintiffs filed the present Motion for Temporary Restraining Order/Preliminary Injunction on October 15, 2021, seeking to enjoin the Proclamation. ECF No. 13. Due to the procedural posture of the case at the hearing on October 22, 2021, the Court adjudicated both the temporary restraining order and the preliminary injunction.

## DISCUSSION

### I.    TRO Standard

Pursuant to Federal Rule of Civil Procedure 65, a district court may grant a TRO in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1)(A). The analysis for granting a temporary restraining order is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). It "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council,*

1  *Inc.*, 555 U.S. 7, 24 (2008).

2  To obtain this relief, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury in the absence of preliminary relief; (3) that a balancing of the hardships weighs in plaintiff's favor; and (4) that a preliminary injunction will advance the public interest. *Winter*, 555 U.S. at 20; *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012). Under the *Winter* test, a plaintiff must satisfy each element for injunctive relief.

Alternatively, the Ninth Circuit also permits a "sliding scale" approach under which an injunction may be issued if there are "serious questions going to the merits" and "the balance of hardships tips sharply in the plaintiff's favor," assuming the plaintiff also satisfies the two other *Winter* factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[A] stronger showing of one element may offset a weaker showing of another."); *see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) ("We have also articulated an alternate formulation of the *Winter* test, under which serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." (internal quotation marks and citation omitted)).

**A. Likelihood of Success on the Merits**

Plaintiffs' Amended Complaint alleges various constitutional and statutory violations resulting from Governor Inslee's Proclamation 21-14 regarding vaccine requirements for state employees and contractors, healthcare workers, and teachers. ECF No. 26 at 15–37, ¶¶ 4.1–14.24. To obtain injunctive relief, Plaintiff must show that there are "serious questions going to the merits" of its claim, and that it is likely to succeed on those questions of merit. *Cottrell*, 632 F.3d at 1131; *Farris*, 677 F.3d at 865.

*1.   Religious Freedom*

Plaintiffs appear to argue Proclamation 21-14 is facially neutral but not generally applicable because it essentially creates "an unlawful faith-based barrier to gainful employment." ECF No. 13 at 16. Plaintiffs further argue the Proclamation is unconstitutional because it cannot survive strict scrutiny. *Id*. at 18. Defendants argue Plaintiffs' claims present facial challenges to the Proclamation because the remedy Plaintiffs are seeking includes a declaration the entire Proclamation is unconstitutional. ECF No. 38 at 16.

As an initial matter, the Court notes that Plaintiffs rely almost entirely on Washington caselaw for their free exercise claim, despite also alleging challenges to the federal Constitution. ECF No. 13 at 16–20. While this Court may exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, the

decision is discretionary. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997), *supplemented*, 121 F.3d 714 (9th Cir. 1997), *as amended*, (Oct. 1, 1997). In the interests of judicial economy, convenience, fairness, and comity, the Court declines supplemental jurisdiction over Plaintiffs' state law claims and will address only the challenges to federal law.

The Supreme Court has long endorsed state and local government authority to impose compulsory vaccines. *See Jacobsen v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905); *Prince v. Massachusetts*, 321 U.S. 158 (1944) ("The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death."). As the contours of judicial review for constitutional cases developed, courts continue to assess which level of scrutiny is applicable in vaccine mandate cases. *See, e.g.*, *Klaassen v. Trustees of Indiana Univ.*, --- F. Supp. 3d ---, No. 1:21-CV-238 DRL, 2021 WL 3073926, at *20 (N.D. Ind. July 18, 2021). Federal courts have routinely analyzed such cases using rational basis and regularly reject cases similar to this one that challenge vaccine mandates based on free exercise of religion. *See, e.g., Phillips v. City of New York*, 775 F.3d 538 (2d Cir. 2015) (per curiam); *Whitlow v. California*, 203 F. Supp. 3d 1079 (S.D. Cal. 2016).

While challenges to free exercise of religion are traditionally subject to strict scrutiny, facially neutral and generally applicable state regulations need only

1  support rational basis, even if they incidentally burden religious practices. *Church*
2  *of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993);
3  *Klaassen*, 2021 WL 3073926 at *25. Defendants argue Plaintiffs' claims allege a
4  facial challenge to the Proclamation; however, Plaintiffs concede the Proclamation
5  is facially neutral. ECF No. 13 at 18. Therefore, the Court will focus only on
6  whether the Proclamation is generally applicable.

7      A law is not generally applicable if the record before the court "compels the
8  conclusion" that suppression of religion or religious practice is the object of the
9  law at issue. *Lukumi*, 508 U.S. at 534. Here, the object of the Proclamation is
10 clear: slow the spread of COVID-19. ECF No. 45-4. There is no discriminatory
11 animus or objective. Moreover, the Proclamation applies with equal force to all
12 educators, healthcare workers, and state employees and contractors, regardless of
13 religious affiliation—or lack thereof. Finally, the Proclamation recognizes
14 exemptions for those who qualify for accommodations due to their sincerely held
15 religious beliefs. ECF No. 45-4 at 6.

16     As Defendants rightly indicate, because there are no exemptions for
17 political, personal, or other objections, if anything, the Proclamation encourages
18 religious practice. *See Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d
19 731, 744 (7th Cir. 2015) ("A benefit to religion does not disfavor religion in
20 violation of the Free Exercise Clause."). Indeed, many of the named Plaintiffs

applied for and received an exemption based on their sincerely held religious beliefs. ECF Nos. 16 at 1, ¶ 4; 17 at 3, ¶ 12; 18 at 3, ¶ 3; 19 at 3, ¶ 3; 20 at 3, ¶ 2; 21 at 3, ¶ 6; 22 at 3, ¶ 6; 23 at 2, ¶ 7; 24 at 3, ¶ 3; 25 at 3, ¶ 4. Plaintiffs cannot demonstrate a discriminatory application solely because they disagree with the availability of accommodations. Plaintiffs have failed to demonstrate how the Proclamation is not generally applicable.

Next, the Court turns to the applicable standard that should be applied to determine constitutionality of the Proclamation. As previously noted, federal courts have routinely applied rational basis when evaluating challenges to vaccine mandates based on free exercise claims. Nonetheless, for the purposes of the present motion, the Court need not decide which standard should apply because the Proclamation survives both strict scrutiny and rational basis. First, Plaintiffs acknowledge the State has a "compelling" interest in preventing the spread of COVID-19. ECF No. 13 at 19. Indeed, the Supreme Court has endorsed this same "compelling" interest. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). The Proclamation is narrowly tailored in that it applies to specific sectors whose employees are essential to combatting COVID-19 and who come into regular contact with vulnerable segments of the public.

Moreover, the State has a legitimate government interest in preventing the spread of COVID-19, as endorsed by the Ninth Circuit. *Slidewaters LLC v.*

*Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021). The Proclamation is rationally related to that interest because it is based on overwhelming evidence that the vaccines are safe and effective, and increasing vaccination rates among those employees who come into regular contact with vulnerable populations (e.g., those who are immunocompromised, who cannot get vaccinated—like children under age 12, and those who must interact with public employees—like prisoners) is a rational action to reduce the spread of COVID-19.

Plaintiffs' objections to the Proclamation relate primarily to their disagreement with Defendants' judgment regarding public health, which is insufficient to overcome the constitutionality of Defendants' actions in enacting and promulgating the Proclamation, regardless of which level of scrutiny is applied. Plaintiffs have failed to demonstrate there are serious questions going to the merits of their free exercise claim, and that they are likely to succeed on those questions of merit.

          2.        *Americans with Disabilities Act*

Plaintiffs' ADA claim appears to challenge only their employers' alleged failure to provide reasonable accommodations. ECF No. 13 at 22. It is unclear which Plaintiffs are alleging disability discrimination. Other than Mr. Wolfe, whose insubstantial argument rests on his own description of a proposed accommodation that was allegedly rejected by his employer, neither the Amended

Complaint nor the preset motion contain facts relating to disability discrimination. In any event, Plaintiffs cannot demonstrate a likelihood of success on the merits or that there are serious questions going to the merits of their ADA claim because they have failed to satisfy the threshold requirement for filing an ADA claim in federal court.

To sustain an ADA claim in federal court, a plaintiff must first file a timely EEOC complaint against the alleged discriminatory party. *Josephs v. Pacific Bell*, 443 F.3d 1050, 1061 (9th Cir. 2006); *Gobin v. Microsoft Corp.*, No. C20-1044 MJP, 2021 WL 148395, at *4 (W.D. Wash. Jan. 15, 2021) (citing 42 U.S.C. § 12117(a) and *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000), *overruled on other grounds*).  Based on the current record, not a single Plaintiff has filed a complaint with the EEOC.  Plaintiffs seem to believe the exhaustion requirement does not apply to them because the remedy they seek is unavailable. Plaintiffs misunderstand the law.  That particular exemption to the exhaustion requirement only applies if "the hearing officer lacks the authority to grant the relief sought." *Paul G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1100 (9th Cir. 2019).  Plaintiffs' ADA claim rests entirely on the theory that their employers failed to provide reasonable accommodations.  However, reasonable accommodation is precisely the remedy an ADA administrative officer is empowered to provide.  Plaintiffs were required to exhaust their administrative

1  remedies prior to filing their ADA claims in federal court and they failed to do so.

2  Consequently, the Court need not address the prima facie elements necessary

3  for an ADA claim as Plaintiffs have failed to satisfy the law's threshold

4  requirement. Plaintiffs have failed to demonstrate there are serious questions

5  going to the merits of their ADA claim, and that they are likely to succeed on those

6  questions of merit.

### 3. *Contract Clause*

8  Plaintiffs argue the Proclamation violates the Contract Clause of the U.S.

9  Constitution because it is "a substantial modification of contracts" that "imposed a

10 new qualification for employment, and a new job requirement." ECF No. 13 at 24;

11 U.S. Const. art. I, § 10, cl. 1. To state a claim for a violation of the Contract

12 Clause, plaintiffs must satisfy a two-part inquiry. *Sveen v. Melin*, 138 S.Ct. 1815,

13 1821 (2018). First, plaintiffs must show the law at issue "operated as a substantial

14 impairment of a contractual relationship." *Id*. at 1821–22. To determine whether

15 there was a substantial impairment, courts look to "the extent to which the law

16 undermines the contractual bargain, interferes with a party's reasonable

17 expectations, and prevents the party from safeguarding or reinstating his rights."

18 *Id*. at 1822. If there is a substantial impairment, courts next turn to whether the law

19 at issue "is drawn in an appropriate and reasonable way to advance a significant

20 and legitimate public purpose." *Apartment Ass'n of Los Angeles Cty., Inc. v. City*

1  *of Los Angeles*, 10 F.4th 905, 913 (9th Cir. 2021).  When the government is a party

2  to a contract, a heightened scrutiny is applied.  *Id*.

3        Here, Plaintiffs have not provided copies of the collective bargaining

4  agreements at issue or stated the material provisions that have allegedly been

5  modified.  Nevertheless, the Court need not decide whether the Proclamation is a

6  substantial impairment of contractual relations because there is no doubt that it is

7  an appropriate and reasonable way to advance a significant and legitimate public

8  purpose, which is curbing the spread of COVID-19.  *Id*. (declining to decide

9  whether an eviction moratorium during the COVID-19 pandemic constituted a

10 substantial impairment because the moratorium was appropriate and reasonable

11 under the circumstances); *see also Slidewaters LLC*, 4 F.4th at 758.  Even applying

12 a heightened scrutiny, the Proclamation serves the State's compelling interest in

13 reducing COVID-19 infections.  *See Roman Cath. Diocese of Brooklyn*, 141 S. Ct.

14 at 67 ("Stemming the spread of COVID–19 is unquestionably a compelling

15 interest.").  As Defendants note, the Proclamation is well-supported by extensive

16 medical evidence, recommendations by professional organizations, and aligns with

17 other measures already in place in other governmental settings.  ECF No. 38 at 36.

18 Conversely, Plaintiffs cite to no authority or evidence in the record to support their

19 contention that the Proclamation is unreasonable.

20       Plaintiffs have failed to demonstrate they will succeed on the merits of their

Contracts Clause claim and that there are serious questions going to the merits of the claim.

### 4. Procedural Due Process (Loudermill)

Plaintiffs' two-sentence argument regarding their entitlement to procedural due process under *Cleveland Board of Education v. Loudermill*, 470 U.S 532 (1985) is undeveloped and devoid of any facts or evidence to support their assertion. ECF No. 13 at 25. Consequently, the Court finds Plaintiffs have failed to show they are likely to succeed on the merits of their due process claim and that there are serious questions going to the merits of the claim.

### 5. 42 U.S.C. § 1983

Plaintiffs cannot succeed on their claim for relief under 42 U.S.C. § 1983 because they have not established any constitutional violations. "By its terms, . . . the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Weiner v. San Diego Cty.*, 210 F.3d 1025, 1032 (9th Cir. 2000) (affirming summary judgment on § 1983 claim where plaintiff failed to establish a violation of a constitutionally protected right). Therefore, Plaintiffs have failed to demonstrate there is a likelihood of success on the merits of their Section 1983 claim and that there are serious questions going to the merits of that claim.

### B. Irreparable Harm

It is difficult to decipher the irreparable harm Plaintiffs allege they will suffer. ECF No. 13 at 25–26. A plaintiff seeking injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original) "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

First, Plaintiffs' generalized and unsupported statement that they have rights under the First and Fourteenth Amendments, the Contracts Clause, and the Equal Protection Clause that "cannot be quantified with precision" does not establish irreparable harm. ECF No. 13 at 26. To the extent Plaintiffs attempt to assert there is a presumption of irreparable harm when constitutional violations are alleged, the presumption does not apply where the party seeking injunctive relief fails to demonstrate a likelihood of success on the merits and that there are serious questions going to the merits of the constitutional claims. *A. v. Hochul*, --- F. Supp. 3d ---, No. 1:21-CV-1009, 2021 WL 4734404, at *4 (N.D.N.Y. Oct. 12,

2021); *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1282 (N.D. Cal. 2014), *aff'd sub nom. Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015); *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991). Thus, Plaintiffs are not entitled to the presumption of irreparable harm.

Moreover, it is well settled that loss of employment does not constitute irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974) (absent a "genuinely extraordinary situation," employment loss is not irreparable harm); *Massachusetts Correction Officers Federated Union v. Baker*, --- F. Supp. 3d ---, No. 21-11599-TSH, 2021 WL 4822154, at *7 (D. Mass. Oct. 15, 2021); *Beckerich v. St. Elizabeth Med. Ctr.*, --- F. Supp. 3d ---, No. CIV 21-105-DLB-EBA, 2021 WL 4398027, at *6 (E.D. Ky. Sept. 24, 2021).

Finally, Plaintiffs' delay in both instituting this action and filing the present motion cuts against their claim of irreparable harm. Plaintiffs filed their initial Complaint on October 6, 2021, nearly two months after at least some Plaintiffs became aware of the vaccination requirement, and two days after the deadline for affected employees to have received their final vaccine dose. ECF Nos. 1; 26 at 6, ¶ 3.4, at 10, ¶ 3.28. Then, Plaintiffs waited until October 15, 2021 to file their present motion seeking emergency injunctive relief. ECF No. 13. Plaintiffs' dilatory filings "implies a lack of urgency and irreparable harm." *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). The Court finds

Plaintiffs have not carried their burden to demonstrate irreparable harm absent a temporary restraining order.

### C. Balancing of Equities and Public Interest

Plaintiffs argue the hardships from the loss of their employment outweighs any benefits gained by implementing the Proclamation. ECF No. 27. Plaintiffs further argue the public interest would be served by delaying implementation of the Proclamation to avoid "immediate and irreparable harm" and to allow the parties to further develop the record and to fully brief the issues. ECF No. 13 at 27.

"When the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted). The Court must balance the hardships to the parties should the *status quo* be preserved against the hardships to the parties should Plaintiffs' requested relief be granted. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quotation omitted). "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v.*

ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION ~ 16

1  *Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (citation omitted).  Regardless, the Court will not grant a preliminary injunction unless the public interests in favor of granting an injunction "outweigh other public interests that cut in favor of *not* issuing the injunction."  *Cottrell*, 632 F.3d at 1138 (emphasis in original).

Here, the balancing of equities tips heavily in favor of the evidenced-backed decisions of the government regarding public health and safety measures, as compared to Plaintiffs' personal beliefs and accommodation preferences.  While the Court is sensitive to the potential economic hardships Plaintiffs face should their employment status change, the balancing of harm and equities weighs in favor of Defendants because there is a "legitimate and critical public interest in preventing the spread of COVID-19 by increasing the vaccination rate."  *Baker*, 2021 WL 4822154, at *8.  Moreover, the public interest in reducing the dangers and spread of COVID-19 would not be served by enjoining the Proclamation.  District courts across the country have come to the same conclusion.  *See, e.g.*, *Does 1-6 v. Mills*, --- F. Supp. 3d ---, No. 1:21-CV-00242-JDL, 2021 WL 4783626, at *17 (D. Me. Oct. 13, 2021), *aff'd,* No. 21-1826, 2021 WL 4860328 (1st Cir. Oct. 19, 2021) (collecting cases).  As one court noted "[w]eakening the State's response to a public-health crisis by enjoining it from enforcing measures employed specifically to stop the spread of COVID-19 is not in the public interest."  *Bimber's Delwood, Inc. v. James*, 496 F. Supp. 3d 760, 789 (W.D.N.Y. 2020).

ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER/PRELIMINARY INJUNCTION ~ 17

Therefore, the Court finds the balance of equities tips in favor of Defendants and that the public interest would not be served by enjoining the Proclamation.

## CONCLUSION

The Court finds that Plaintiffs have failed to satisfy either the *Winter* test or the *Cottrell* sliding scale test. Therefore, Plaintiffs are not entitled to a temporary restraining order or a preliminary injunction.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Plaintiffs' Motion for Temporary Restraining Order/Preliminary Injunction (ECF No. 13) is **DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED October 25, 2021.



THOMAS O. RICE
United States District Judge

ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION ~ 18